UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DONALD DOMINICK

CIVIL ACTION

VERSUS

NO. 12-497-JJB-RLB

CAPTAIN TODD BARRERE, ET AL.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the court on the following motions: (1) Defendants Captain Todd Barrere, Lieutenant Richard Camp, and Lieutenant Patrick Cochran's Motion [doc. 25] for Summary Judgment, and (2) Defendant Sergeant Craig White's Motion [doc. 31] for Summary Judgment. Because Defendant White's motion incorporates the entirety of the other defendants' motion for summary judgment, the court will deal jointly with these motions. The Plaintiff Donald Dominick opposed both motions. (Docs. 29; 39). Jurisdiction is based on 28 U.S.C. § 1331. Oral argument is not necessary. For the following reasons, the court (1) **DENIES** the Defendants Captain Todd Barrere, Lieutenant Richard Camp, and Lieutenant Patrick Cochran's Motion [doc. 25] for Summary Judgment, and (2) **DENIES** the Defendant Sergeant Craig White's Motion [doc. 31] for Summary Judgment.

### Background

Plaintiff Donald Dominick is an inmate confined to Elayn Hunt Correctional Center. (Doc. 25-1, p. 1, ¶ 1). At the time of the alleged incident, defendants Captain Todd Barrere, Lieutenant Richard Camp, Lieutenant Patrick Cochran, and Sergeant Craig White were all employed at the Elayn Hunt Correctional Center. (Doc. 25-1, p. 1–2, ¶¶ 4–5, 7–8). On January 8, 2012, while the plaintiff was confined at Elayn Hunt Correctional Center, it is undisputed that officers sprayed the plaintiff with the chemical agent Freeze plus P and used at least one baton to strike the plaintiff. (Doc. 25-1, p. 3–4, ¶¶ 16–23). The exact events and circumstances

1

surrounding these encounters, and whether there was justification for these uses of force, are still in dispute, as further provided below. Nonetheless, later in the day on January 8, 2012, the plaintiff was admitted at the Assessment and Triage Unit complaining of headaches, left arm pain, and bilateral leg pain. (Doc. 25-1, p. 4, ¶ 26). Doctors observed that the plaintiff had a contusion on the right forehead, as well as a knot with redness on his cheek and "multiple red small semi-round bruising." (Doc. 25-1, p. 4, ¶¶ 28–31). Thereafter, a disciplinary commission sentenced the plaintiff to a total loss of 40 days for multiple violations of rule 3, "defiance," and rule 5, "aggravated disobedience."

As a result of the events on that day, the plaintiff filed the present suit. In it, he seeks relief pursuant to 42 U.S.C. § 1983, because he avers that the defendants violated his "4th, 8th and/or 14th Amendment right to be free from use of corporal punishment, unnecessary and/or excessive force while being seized and/or detained by the Defendants." (Doc. 1, p. 12, ¶ 53). Furthermore, the plaintiff seeks attorney's fees, costs, and punitive damages. (Doc. 1, p. 13, ¶ 59).

Defendants Barrere, Camp, Cochran, and White filed the pending motions for summary judgment. (Docs. 25; 31). In their motions, the defendants claim that summary judgment should be granted for the following reasons: (1) "[p]laintiff failed to allege sufficient connexity [sic] between any acts of defendants and any violation of his civil rights," (2) "[d]efendants are entitled to qualified immunity," and (3) [p]laintiff's excessive force claim is barred by the Supreme Court's decision in *Heck v. Humphrey*." (Doc. 25, p. 2, ¶¶ 3–5).

**Analysis**

1. <u>Summary Judgment Standard</u>

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. P. 56(a). The movant must demonstrate that there is no genuine issue of material fact for trial. When the non-moving party has the burden of proof at trial, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party can do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not . . . competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

"In a motion for summary judgment, a federal district court is not called upon to make credibility assessments of conflicting evidence." *Melancon v. Ascension Parish*, 823 F. Supp. 401, 404 n.19 (M.D. La. 1993). "To the contrary, all evidence is considered in the light most favorable to the non-movant." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (quoting *Anderson*, 477 U.S. at 255).

3

2. Excessive Force Claim

The defendants' primary claim is that the plaintiff cannot present sufficient evidence to prove that excessive force was used on January 8, 2012. The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on prisoners, including using excessive force. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Whenever prison officials stand accused of using excessive physical force . . ., the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The Fifth Circuit previously provided the following with regards to excessive force claims in the prisoner context:

> Several factors are relevant in the inquiry whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment. These include:
> 1. the extent of the injury suffered;
> 2. the need for the application of force;
> 3. the relationship between the need and the amount of force used;
> 4. the threat reasonably perceived by the responsible officials; and
> 5. any efforts made to temper the severity of a forceful response.

*Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson*, 962 F.2d at 523).

First and foremost, it must be emphasized that the only claim before this court is the plaintiff's Section 1983 excessive force claim, as well as his related claim for attorney's fees, costs, and punitive damages. In his opposition to the defendants' motions, the plaintiff appears to be arguing for a denial of medical care claim and a retaliation claim. (*See* doc. 29-2, p. 1). However, these claims have not been properly pleaded before this court, and thus, are not currently pending. Furthermore, with regards to the alleged denial of medical care, neither party disputes the fact that plaintiff received medical care on the day of the incident. Rather, the plaintiff claims that prison doctors refused to provide the medical care he subjectively requested, which allegedly occurred weeks after the incident at issue. Moreover, it must be noted that Dr.

4

Roundtree, the individual that the plaintiff claims refused to provide the requested care, is not even a party to this suit. (*See* doc. 29-4, p. 7). Accordingly, only the Section 1983 excessive force claim is presently pending in front of the court.

Additionally, in making this ruling, the court did not consider the deposition of Warden Steve Radar, as this deposition concerns a completely separate case in a different correctional facility, and therefore, is not relevant to the matter at hand. (Doc. 29-18). Furthermore, the court only considered the signed verifications of Kennedy Jackson and Christopher Cheneau, and not the verifications of the plaintiff, Kevin Lewis, and Michael Brown. The defendants had argued that this court should not consider any of the verifications, because they "would not be admissible into evidence and should be disregarded by the court." (Doc. 35, p. 5). However, the current version of Rule 56 of the Federal Rules of Civil Procedure provides that a court can consider a declaration at the summary judgment stage, provided it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the . . . declarant is competent to testify on the matters stated." Fed. Rule Civ. P. 56(c)(4). Furthermore, these declarations must comply with 28 U.S.C. § 1746, which provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved

5

> by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> . . .
> > (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746. With regard to the Kennedy Jackson and Christopher Cheneau declarations, the actual letters from these two individuals are dated, and there is a signed "Verification" document attached to each of the letters which provides that the attached statement is true and correct under penalty of perjury. (Docs. 29-9; 29-11). Conversely, the court did not consider the declaration of the plaintiff because it did not include any date regarding when it was made, and further, the declaration did not provide any information relevant to this court's ultimate determination. (Doc. 29-2). The court also did not consider Kevin Lewis' and Michael Brown's declarations, because neither declaration included a signed statement that it was made under penalty of perjury. (Docs. 29-10; 29-12).

Turning to the pending motions for summary judgment, this case involves two vastly different versions of events. According to the defendant, this was a situation where the plaintiff engaged in multiple instances of impermissible behavior and the defendants' used appropriate force to subdue him. Based on sworn affidavits attached to the defendants' motion, it is alleged that the plaintiff initially engaged in a physical altercation with Sergeant Clark at approximately 3:27 p.m. on January 8, 2012. (Docs. 25-3, p. 2; 25-4, p. 2). As a result, Sergeant Clark and Master Sergeant Julian McCoy used a wrist lock to subdue the plaintiff. *Id.* Captain Barrere then escorted the plaintiff to a different section of the penitentiary. (Doc. 25-4, p. 2). As a result of this initial encounter, Sergeant Clark wrote the plaintiff up for a violation of rule 3, "defiance," and rule 5, "aggravated disobedience." (Doc. 25-4, p. 3).

Subsequently, at approximately 3:40 p.m., it is claimed that the plaintiff began to cause another disturbance by yelling obscenities in the shower. (Doc. 25-8, p. 1–2). After giving verbal orders to cease the disturbance, Lieutenant Camp retrieved a can of chemical agent Freeze plus P and deployed two short bursts into the shower. (Doc. 25-8, p. 2). After that, the plaintiff complied by approaching the bars to be restrained. *Id.* The plaintiff was again cited for violating rule 3, "defiance," and rule 5, "aggravated disobedience." (Doc. 25-8, p. 3).

Nevertheless, Master Sergeant White then claims to have witnessed the plaintiff beating his head against the floor of the shower. (Doc. 25-10, p. 1). Master Sergeant White gave direct verbal orders for the plaintiff to stop this and called for assistance from Captain Barrere. *Id.* at p. 2. Captain Barrere and Lieutenant Cochran responded to the request for help and took over the situation. *Id.* After the plaintiff refused to comply with direct verbal orders to stop pounding his head on the floor, Captain Barrere and Lieutenant Cochran entered the shower to subdue the plaintiff. (Doc. 25-11, p. 2). In their attempt to subdue him, Captain Barrere placed a capture shield on the plaintiff, and Lieutenant Cochran hit the plaintiff with a baton on the thigh area. (Docs. 25-11, p. 2; 25-12, p. 3). Thereafter, Captain Barrere placed the plaintiff in a wrist lock, and Lieutenant Cochran placed restraints on the plaintiff. (Doc. 25-11, p. 2). It appears that as a result of this encounter, the plaintiff was cited another time for violating rule 3, "defiance," and rule 5, "aggravated disobedience." (Doc. 25-11, p. 3).

At 4:12 p.m., the plaintiff sought medical treatment from Dr. Adrian Almodovar at the Elayn Hunt Correctional Facility. (Doc. 25-14, p. 4). According to the report, the plaintiff had bruising on his right forehead, but there was no bleeding or a break of the skin. *Id.* His left cheek had a knot with redness, and he complained of a burning sensation on his face and mild back pain. *Id.* Additionally, the plaintiff had approximately eight locations of small, semi-round

bruising on his body. *Id.* He received an assessment and treatment for all of his complaints at that time by Dr. Almodovar. *See id.* at p. 1–4.

At approximately 4:20 p.m., LaShawnda Horne, a social worker employed at Elayn Hunt Correctional Center, spoke to the plaintiff regarding the incident. (Doc. 25-15, p. 1–2). In their conversation, the plaintiff "stated that he had an argument with a Corrections Security Officer, and thought that the Corrections Security Officer was about to hit him and he defended himself by hitting the Corrections Security Officer first." *Id.* at p. 2. The plaintiff "cried during the interview and denied banging his head on the ground." *Id.* Additionally, "[h]e stated that he felt like his life would be in danger if he went back to his current housing area because he was assaulted by officers after he hit the Corrections Security Officer." *Id.* Thereafter, the plaintiff was placed on "Standard Suicide Watch." *Id.* at p. 3.

While the defendants' version of the events appears damning, the unsworn declarations of Kennedy Jackson and Christopher Cheneau paint an entirely different picture. Through use of a mirror, Mr. Jackson witnessed Lieutenant Camp and Sergeant White put the plaintiff in the shower. (Doc. 29-9, p. 2). According to Mr. Jackson, Sergeant White then gave the plaintiff a white jumpsuit to put on, and both Sergeant White and Lieutenant Camp left the scene. *Id.* Seemingly without any provocation, Lieutenant Camp returned and began to spray the plaintiff with "gas." *Id.* Sergeant White began to yell that the plaintiff was beating his head against the floor, when in reality, according to Mr. Jackson, the plaintiff was clearly screaming that he could not see. *Id.* Mr. Jackson states that he observed Captain Barrere approach the shower with an electric shield, and Lieutenant Cochran and Lieutenant Camp each had "sticks" in their hands. *Id.* All three men entered the shower. *Id.* At that point, Mr. Jackson heard the plaintiff scream for

8

them to get off and that they were beating him.[1] *Id.* After a prolonged silence, Mr. Jackson witnessed "them" drag the plaintiff—who was now unconscious—out of the shower and around the corner. *Id.*

Mr. Cheneau recounts a similar progression of events, which he witnessed through his "peeper." (Doc. 29-11, p. 2). Both Sergeant White and Lieutenant Camp escorted the plaintiff to the shower and provided him with a white jumpsuit. *Id.* Then, Lieutenant Camp began to spray the plaintiff with "gas." *Id.* According to Mr. Cheneau, Lieutenant Camp stated that the plaintiff was beating his head on the floor, but that was not accurate, because the plaintiff was stating that he could not see because the gas went in his eyes. *Id.* Nonetheless, Captain Barrere entered the shower with an electric shield, and Lieutenant Cochran and Lieutenant Camp both entered the shower with "sticks." *Id.* According to Mr. Cheneau, "all you could hear was [the plaintiff] screaming for someone to get them off him."[2] *Id.* At that point, the plaintiff went silent, and Mr. Cheneau then witnessed "them" dragging the plaintiff from the shower and around the corner. *Id.*

As is readily apparent, the evidence paints two vastly different pictures of the events that occurred on January 8, 2012. According to the defendants, the plaintiff's insubordination prompted the reasonable and necessary response of spraying him with a chemical agent and then utilizing force to quell his insurrection. But, the plaintiff's evidence shows an individual brought into the shower, sprayed with "gas" without any provocation on his part, and then brutally beat by multiple prison guards based on the pretext that he was beating his head against the ground. As aforementioned, the court looks at the evidence in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. Furthermore, the court will

---

[1] Based on what has been presented before this court, it appears this evidence would be admissible at trial under a hearsay exception. *See* Fed. Rule Evid. 803.

[2] Similarly, this statement also appears likely to be admissible at trial under a hearsay exception. *See* Fed. Rule Evid. 803.

9

not make credibility determinations regarding conflicting evidence at the summary judgment stage, as that is the province of the jury. *See Melancon*, 823 F. Supp. at 404. Accordingly, looking at the evidence in the light most favorable to the plaintiff, this court finds that there are genuine issues of material fact as to the events on January 8, 2012, and thus, granting summary judgment for the defendants as to the excessive force claim would be improper.

3. Qualified Immunity Claim

In their motion, the defendants also argue that they are entitled to qualified immunity for their actions. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts must apply "a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). First, the court must "determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." *Id.* If so, the court next considers "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* at 411. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir. 2001) (quoting *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). The court

"must evaluate an officer's use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627−28 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Similar to the denial of summary judgment as to the excessive force claim, this court must also deny summary judgment with regards to the defendants' claim that they are entitled to qualified immunity for their actions. In this court's view, there are critical differences between the evidence presented by the parties, with one side presenting evidence that the officer's actions were reasonable and justified, and the other side presenting evidence of an unwarranted attack on the plaintiff. Accordingly, there are genuine issues of material fact regarding whether there initially was a violation of clearly establish constitutional rights, and even if there was, whether the defendants' conduct was objectively reasonable under the circumstances. Therefore, summary judgment must be denied as to the defendants' qualified immunity claim.

4. *Heck v. Humphrey* Claim

Finally, the defendants declare that the plaintiff's excessive force claim is barred by the decision in *Heck v. Humphrey*. 512 U.S. 477 (1964). More specifically, the defendants claim that because the plaintiff was found guilty by the prison disciplinary board on the rule 3 "defiance" and rule 5 "aggravated disobedience" charges, any "finding in his favor on this [excessive force] claim would imply that the disciplinary charges . . . which then necessitated the use of force by the defendants was invalid." (Doc. 25-2, p. 6).

In *Heck*, the Supreme Court provided that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28

> U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486–87. The Supreme Court previously applied the *Heck* analysis to a prisoner challenging his prison disciplinary proceeding. *See Edwards v. Balisok*, 520 U.S. 641 (1997). In *Edwards*, the plaintiff—an inmate at a state penitentiary—was found guilty of four prison infractions and "was sentenced to 10 days in isolation, 20 days in segregation, and deprivation of 30 days' good-time credit he had previously earned toward his release." *Id.* at 643. After his appeal with the prison's appeal system was rejected, the prisoner filed a Section 1983 action "alleging that the procedures used in his disciplinary proceeding violated his Fourteenth Amendment due process rights." *Id.* The plaintiff claimed that "Edwards, who was the hearing officer at his disciplinary proceeding, concealed exculpatory witness statements and refused to ask specified questions of requested witnesses, which prevented respondent from introducing extant exculpatory material and 'intentionally denied' him the right to present evidence in his defense." *Id.* at 644 (internal citations omitted). According to the plaintiff, "the cause of the exclusion of the exculpatory evidence was the deceit and bias of the hearing officer himself." *Id.* at 647. Applying *Heck* to the facts of the case, the Supreme Court in *Edwards* found that "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." *Id* at 646. Therefore, the Supreme Court concluded that "respondent's claim . . ., based on allegations of deceit and bias on the part

of the decisionmaker [sic] that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* at 648.

The present case is necessarily different from the *Edwards* case cited by the defendants. In the present case, the plaintiff does not allege that there were any problems or flaws in the actual prison disciplinary proceeding. Instead, he is alleging that the defendants used excessive and unconstitutional force, which is a completely separate issue from the validity or invalidity of the disciplinary proceedings. In general, the plaintiff could succeed on his excessive force claim and still have been found guilty of violating prison protocol. Even if the plaintiff engaged in behavior that violated prison rules, the defendants' response in spraying the plaintiff with a chemical agent and beating him to such an extent that he fell unconscious could result in Section 1983 liability for utilizing excessive force. It is not a mutually exclusive proposition as the defendants would have this court believe. Rather, the excessive force inquiry is distinct. A finding that the defendants utilized excessive force in this matter does not necessarily invalidate the disciplinary proceedings. Accordingly, the court refuses to dismiss the excessive force claim under *Heck* and *Edwards* as requested by the defendants.

## Conclusion

Therefore, the court (1) **DENIES** Defendants Captain Todd Barrere, Lieutenant Richard Camp, and Lieutenant Patrick Cochran's Motion [doc. 25] for Summary Judgment, and (2) **DENIES** Defendant Sergeant Craig White's Motion [doc. 31] for Summary Judgment.

Signed in Baton Rouge, Louisiana, on January 21, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**